All right, Mr. Sheehy, so you escaped the great Virginia snow and ice storm. I did. No thanks to American Airlines. I know you had a rough time. We appreciate your being here. It's an honor to appear. And if the court is okay with it, I'd like to reserve five minutes for remarks. Yes, you've done that. So plaintiffs asked the Department of Labor for an advisory opinion saying that their health care plan would be regulated by the department under ERISA. But the department told plaintiffs that their plan would instead be regulated by the states. And as the department explained, ERISA only covers plans arising from a genuine employment relationship. And plaintiffs' relationship with their so-called limited partners falls short of that threshold. Nevertheless, the district court granted relief that requires the department to treat plaintiffs' plan as an ERISA plan forever. That decision was wrong for two main reasons. First, the advisory opinion isn't final agency action subject to APA review. And indeed, neither plaintiffs nor the district court has cited any court of appeals decision reviewing an advisory opinion saying to the requester that they wouldn't be regulated by the government and that the government wouldn't be doing anything to them. And second, even if the advisory opinion were reviewable, the department's conclusions were reasonable and reasonably explained. Counsel, if the department had said, if it agreed with the requester, would that be final agency action? I don't think it would be, Your Honor, because— So it doesn't actually matter whether the department says X or Y. Or maybe a better way to say X or not X. Your point is that advisory opinions forever and always are never final agency action? That's certainly the view that most courts, indeed all courts, thinking about advisory opinions have hewn to. But the court doesn't need to go nearly this far. And so all the advisory opinion here says is we're not going to impose any legal consequences on you. Let me ask it this way. Suppose the department—I don't know if the department does notice and comment rulemaking, so maybe we can use a different agency—but imagine an agency proposes a rule and says we're thinking about adopting a safe harbor for industry in this particular way. And so a whole bunch of people come in and they file the comments in response to the NPRM and they say please adopt the safe harbor because we'd really like to be able to be protected in this particular way, whatever it is. And then the agency says in the final rule we've decided not to adopt the safe harbor. It's promulgated in the Federal Register. It's codified in the Code of Federal Regulations. But it does not provide the legal protection asked for by the aggrieved parties. They file actions under the APA, not final agency action. I just want to clarify, Your Honor, what's safe harbor? There's no legal protection for you, right? So the final rule says to the industry, and say there's 100 different people who ask for it, you don't get the legal protection. We're not adopting the safe harbor, and it's in a final rule. The position of the government is that's not final agency action because it doesn't actually give you any legal protection? That seems to be quite different from this case, and with Your Honor's indulgence I'll try to explain why. A final rule issued by an agency would be entitled to Chevron deference, and so courts would have to follow what the agency said in the rule. And so if an agency says we've exercised our discretion to interpret ERISA, which is ambiguous on the score, here's what we think, we think it denies you the safe harbor, even if a court ended up disagreeing with the agency because the agency promulgated it in a duly notice and comment rule, that would be entitled to some sort of legal effect. And that's what the other side says is happening here. But an advisory opinion is quite different from a notice and comment rule. It's different than guidance? It is, you know, and of course as the court knows. Because we have held that guidance could be final agency action, this circuit. Yes, Your Honor, and I think the Texas v. EEOC case with which you're quite familiar helps with that because the labels that agencies attach to their actions obviously don't control. But even in the Texas case, the court recognized in, for example, footnote 23, that the important thing is whether the guidance document in question has broader effects or whether, quote, it just involves statements directed at an individual entity expressing the agency's view of the law with respect to that entity. Is the D.C. circuit agnostic because the District of D.C. has held that an advisory opinion could be final agency action? Am I wrong on that? Are you referring to the Seba Gagee case? I'm referring to Ruckelshaus, I believe. I don't know what the District of D.C. district courts have said on that, but the D.C. circuit in the case that is quoted in the footnote has held that advisory opinions are non-final, and indeed so has the Sixth Circuit in the Airbrake Systems case where Judge Sutton— What's the lay of the land? So the lay of the land is, as far as I know, no court of appeals has said that an advisory opinion is final agency. District courts in our circuit, separate and apart from this case, have held that they were final before. That's possible, Your Honor, and I'm not sure. But to the extent that district courts— The Seventh Circuit held, the Ninth Circuit. What's the lay of the land? Are they most agnostic on the topic? I haven't done the full canvas of every single circuit, Your Honor, but here's what I have found in my research. In the cases that are discussed in the brief, and I did try to look in all of the other circuits, there's no case saying that an advisory opinion is saying, we're not going to regulate you. We don't think that we have the authority to regulate you, so we're not going to do anything to you. No court has said that that's reviewable, and if there is— It's really surprising that you said that the safe harbor would not be a final. I'm shocked, actually, at your answer to that question. I want to make clear, in this case, there is no safe harbor. Oh, I understand, but I took the position that you— I understand your argument to be that it matters that DOL says, we don't agree with you, as opposed to if you had come in and said, we do agree with you. So you have several different arguments, and I'm trying to identify which ones are the ones that really matter. And so my safe harbor example is to get at this question, which is that I take it that the content of the advisory opinion, in your view, matters as to whether it's final agency action, and I see no support for that as evidenced by the safe harbor position, and I share Judge Elrod's surprise at the response. Right. So to me, the critical question with respect to this distinction is whether there are legal consequences that flow from the statement that the department is not going to regulate you. And for that, it's not the matter of the yes or the no. It's the fact that this no doesn't carry with it a legal consequence. But a yes would have. A yes would have carried the consequence of, you know, saying to the regulated entity, we think you are subject to ERISA. So to the extent possible, you know, if you don't follow ERISA, then the agency might do something to you. And that is quite different from what's happening here. Right. And so with respect to the safe harbor point, the important thing is that this advisory opinion, courts can disagree with. So imagine the following circumstance. A state like the state of Washington decides to sue plaintiffs, saying that plaintiffs had violated state insurance law. Plaintiffs would be able to say, notwithstanding the advisory opinion, you know, you shouldn't acknowledge what the Department of Labor said. It's not entitled to any sort of weight. The only deference that applies is skid more. And the court that's hearing that dispute would be able to say, you know, notwithstanding what the Department of Labor thought, I respectfully disagree. And so— Do you think that advisory opinions are entitled to no weight? I'm just trying to use your words. Yes, Your Honors. No weight. To skid more weight. Just a respectful consideration by courts. Do you think that's no weight or some weight? No, it's some weight, but it's not legal weight. So it's distinct from Chevron in the sense that if a court disagrees with the agency, the court can say, well, you know, agency, I understand you thought one thing, but I think, you know, you're wrong and I'm going to go down that path. Whereas in Chevron, to the extent that that doctrine would apply, the court would say, you know, I disagree with your interpretation of the statute, but it's reasonable, so notwithstanding the fact that I would have reached a different conclusion, I'm going to go with yours. And again, Judge— Go ahead. I'm sorry. A very helpful case that explains this distinction is Judge Sutton's decision in air brake systems in the Sixth Circuit. And that, you know, confirms that advisory opinions such as the one at issue here are not final because they don't get Chevron deference, because they're merely entitled to skid more. So the fact that a court is just going to look at what the agency says and take it under, you know, some consideration, give it— What sort of— I'm sorry. No, continue on the deference, because I want to talk about the merits. Oh, perfect. What sort of deference is a guidance document entitled to? It's only entitled to skid. So it didn't matter in Texas v. EEOC. It didn't matter in Texas v. Biden that the documents that were promulgated were just guidance documents. I mean, it depends, Your Honor. I don't want to give a broad answer about all guidance because, as you know, there are many different flavors of guidance. But, you know, in answering the question, the court would presumably look to the factors set forth in cases like Meade and Barnhart, where, you know, the Supreme Court says, you know, what's the formality here? How, you know, deep does the agency statement go? How hard did the agency think about it? And one thing is quite clear is the Supreme Court explained in cases like Yates and Christensen, advisory opinions of this sort don't satisfy any standard for that sort of deference under Chevron. Instead, they're merely entitled to skid more, and, you know, the weight of authority indicates that advisory opinions that are only entitled to skid more deference don't have any sort of legal consequences sufficient to make them final under the APA. The agency didn't think very hard about this letter at all, did it? No, Your Honor. The agency thought quite hard about the letter, but the difference is— I guess it's rhetorical. The question is that Judge O'Connor found that it was arbitrary and capricious. Yes. He wouldn't have had to have found that under your interpretation of what we're doing. He could have just said it's not very good and moved on, and I disagree. But he actually went the step and found it was arbitrary and capricious, right? In answering Judge Oldham's question colloquially, I may have given Your Honor a misimpression about why this document doesn't have the same trappings of formality. And so let me try to give a more precise answer to that and then address your discussion of the merits. The reason it doesn't have the trappings of formality was because the agency wasn't allowed to conduct its own investigation. An advisory opinion by the agency's own advisory opinion regulations has to take the facts as represented by plaintiffs. And, you know, notwithstanding the fact that, as I think the patient's group's amicus brief does a good job of setting forth, it might be that the facts of this case are different from the facts as represented by the agency. Agency can't take that into account. The agency has to go with what the requesters have set forth. And that's the reason why it doesn't have the same trappings of formality that would give advisory— that would give other sorts of agency actions a greater deference. And we see a lot of agency action. This circuit sees a tremendous amount of agency action cases. Yes, Your Honor, indeed. But with respect to the arbitrary and capricious finding, it turned on a misimpression of what ERISA covers. So to be an ERISA plan, the limited partners have to qualify as, quote-unquote, participants. And there's three paths to participant status. First, you can be a common law employee. Second, you can be a so-called working owner. Or third, you can be a bona fide partner. And I don't think anybody disagrees with that general framework. The other side doesn't argue that their limited partners are common law employees. They're mostly focused on the working owner and the bona fide partner piece. But as to the working owner set of things, the agency reasonably assessed all of the facts as represented in the request and concluded that these folks are not, in fact, working owners at all. And the agency's analysis turns on the Supreme Court's description of working owners in Yates. It's quite opaque. But all the court said was to be a working owner, you need to just wear two hats as an employer and an employee. And the agency just looked at these working owners and found in some detail that they just don't bear enough indicia of employee and employer status. So with respect to employee, for example, they don't perform work as that's traditionally understood. They don't appear to get paid. They don't appear to be supervised by anybody. And they don't appear to have to report to any sort of work location. And similarly, with respect to the employer piece of it, they don't appear to do any supervision. They don't appear to meaningfully run the business. And they don't appear to give or take any sort of direction. I think that the limited partner one is more, as owners, is an easier one to see. You're doing the third one. No, no. I'm doing the working owner piece. Right. I know. You're doing the—that's what I'm saying. I'm saying they have an ownership interest, and so why isn't that— And they're actively engaged because they provide services. So Your Honor is talking about the bona fide partner test? Yes. I see. So with respect to that, I think the agency's analysis with respect to the working owner is very similar. So the request represented that there is an equity ownership right, but the agency explained that that seemed to be quite illusory. There's no information about what that ownership right actually entails. And if you look at the other representations in the district court record, it notes, for example, that the limited partners get their ownership interest for free. That's at page 449 of the record on appeal. And similarly, the investigations from the state of Washington looked at a couple of these contracts, and it indicates that there's only a, quote, one millionth percent interest. And so the agency just didn't have enough information to accept the representation that there was a genuine equity ownership right. But moreover, the agency also concluded that the limited partners aren't actively engaged in providing services to the business, and that's because the only thing that they're doing—I see my time is about to expire, by the way. Is it okay if I— You can finish your answer. Thank you. The only thing that the limited partners appear to do is install something on their computer or their phone that tracks their browsing data. But that's what everybody does when they use Google or Facebook or applications like that, and I imagine it would come as some surprise both to Google and Facebook and the people who use Google and Facebook that users would be performing work for the company under that understanding of the term. So for those reasons, the agency reasonably concluded that the limited partners are not bona fide partners. Thank you, Mr. Sheehan. Thank you. We'll save time for rebuttal. Mr. Harris. May it please the Court. DNP sought a determination from the Department of Labor that the proposed single-employer group health plan is governed by ERISA. The district court correctly held that the department's advisory opinion ignored established law by concluding the opposite. At bottom, the advisory opinion hinged on the department's dislike for DNP's business model, which can't justify depriving DNP's limited partners of the right to participate in an ERISA plan. This court should affirm the district court's judgment. First, under controlling precedent, the advisory opinion satisfies the test for final agency action as reviewable. And second, the advisory opinion is arbitrary, capricious, and contrary to law. Are we creating a circuit split, or we already have it? I don't believe there will be a circuit split, Your Honor. Can you explain that? On which issue are you asking precisely? I'm not aware of anything in the case. I'm asking about final agency action and advisory opinion. I don't believe there's anything new that this court will be doing in holding that this is final. It's under the Supreme Court's test in Bennett v. Speer. You're simply looking at whether it marks the consummation of the agency's decision-making process. And second, whether it either determines rights or obligations or creates legal consequences. That is the test that this court has applied in other review of agency actions, and I don't believe it would be creating a circuit split. If the advisory opinion here meets that test, it marks the conclusion of the department's decisional process. Under the department's rules, DMP has no further recourse because the advisory opinion is binding on DMP, and DMP has no means for administratively appealing it. Do other circuits have bright-line rules that advisory opinions cannot be final agency action? Not that I'm aware of, Your Honor. And here— So what are the legal consequences? There are no—excuse me, I didn't mean to—I don't mean to interrupt. What are the legal consequences, at least insofar as state insurance regimes might be concerned? The department says that the favorable opinion would have prevented the department from investigating the plan and reaching a different conclusion, but the rules are different than that. The consequences here are that had the department found that the plan was an ERISA plan, that would have been a determination of the issue, which would have meant the states would be very unlikely because they're going to be making the determination of whether it's governed by state law in the face of a federal department, the controlling department, the Department of Labor, already making the determination that it's an ERISA plan, and it's very unlikely that the state agency, therefore, would conduct an investigation. Well, that means it may have persuasive effect, possibly highly persuasive effect, just as we might consider an opinion from another circuit to be highly persuasive but not binding on us. So how low does it have an actual legal consequence in the various states? I believe ultimately it would end up in federal court to determine what the effect of the advisory opinion is and whether the state, in fact, has the ability to control . . . The question is going to be whether it's an ERISA plan, and if so, the ERISA regulations will control and ERISA will preempt state law, and that's ultimately the opinion that would end up back in federal court. Why isn't that . . . Why can't the state of Washington have that . . . That opinion will just be pursued when the states come after them and continue to come after, right? Your Honor, first, there is nothing in the lower court record about that investigation. That was raised for the first time by the department in its reply brief on appeal and therefore shouldn't be considered in the case. So assuming hypothetically then that a state will come after them, then they will . . . Then that's . . . The state can . . . They pursue it kind of for the first time. It's not . . . What we say is not binding on them, and what the Department of Labor can't weigh in, then so it's just going to be considered raisonable in that situation, basically, if there's no advisory opinion that has force, right? Your Honor, let me try to answer that. That investigation is going on because the advisory opinion says that it's not an ERISA plan. If it's held to be an ERISA . . . Had the advisory opinion said it was an ERISA plan, or if this court affirms the district court's judgment, then we will have a determination that the plan is an ERISA plan, and that should prevent the states from being able to make the investigation. It may ultimately have to go back to court. Why would it be . . . Why would that prevent . . . Assuming argumenta that we agree with Judge O'Connor for the district court, why would that prevent the state of Washington from going after . . . because it's not . . . There's no safe harbor from that. It's just our court's determination. I don't understand why that has any binding effect. It's the legal determination of whether the plan is an ERISA plan, and if so, it is subject to regulation by the Department of Labor and is not subject to regulation by the states because ERISA preempts their regulation. But a court that's not even in our circuit doesn't have to listen to what our determination is, is my point. Yes, Your Honor, and ultimately it will need to go to court to have that determination made, but the state can't simply say, we're going to disregard the determination if that is right, and at this point it will be a district court opinion upheld by the circuit. The state can't simply say, we're going to disregard that. We don't think this is an ERISA plan, and we're going to regulate it. Ultimately, some court's going to have to decide that as who's right, and if this court affirms the district court's judgment, you then have the federal courts determining the ERISA statute, and that will have to go to another court to make the determination whether that binds the state of Washington or some other jurisdiction in making an investigation. Counsel, can I ask you about the merits? One of the things that was sort of most striking to me about the advisory opinion the department issued is that it doesn't seem to grapple with two things. One is the stuff that's in the request, and the second is, relatively, the thing cited in the request that the department had previously said, and the most notable would be the 1999 advisory opinion, that's cited in the request, discussed over and over and over again in Yates, and then appears nowhere in the response. So without getting into this whole thing about, is it the common law definition of an employee, do we look to Part 4 and the incorporation of the Internal Revenue Code, would it be sufficient for the court to literally just say, the advisory opinion is arbitrary and capricious, and should be set aside, as Judge O'Connor did, and that's sufficient, at least on the merits. I want to ask you about the injunction too, but do we have to get into this whole thing? There's a ton of briefing and fighting about common law versus the various statutory definitions. I think it would be necessary, and it's going to hinge on the injunction issue, I believe, Your Honor. Okay. Because if the court simply vacated it, then that's not the relief that DNP would be entitled to here. They were entitled to relief that the district court gave through the injunction, and I think to warrant the injunction relief, the court had to go through and make a determination, not only was it arbitrary and capricious, because as the court says, that's the easy one. If you look at the advisory opinion, you look at the other factors the court went to, that's easy, but what is the answer? Is this an ERISA plan or not? And that's why the district court went through that analysis to determine that yes, it is an ERISA plan, and therefore the injunction was warranted. I guess what I'm wondering is, couldn't you just say, and I'm wondering if this doesn't meet the relief that your clients are entitled to, that the department's position is arbitrary and capricious, it shall be set aside pursuant to Section 706 of the APA, and the injunction can remain in effect pending further agency action, reserving the question of what the right answer is on the statutory interpretation question. Do you see what I mean? And I'm sorry. The last part was in the injunction would remain in effect pending further agency action. Right, because as I understand what the injunction is saying, is that what the agency has said is arbitrary and capricious and shall be set aside insofar as the legal consequence is to push you outside of ERISA and expose you to these other things. The agency is enjoined from taking contrary action until it comes up with a different explanation for it. But the advisory opinion under the department's procedures in Section 10 is binding once it's issued, and the parties can rely on it, and that is what DMP is entitled to do here. It's only if the facts change that the department gets to go in and make a new determination, and that shouldn't happen here. Because the facts as submitted in the request for advisory opinion are still the relevant facts, that's why the district court went on and granted the injunctive relief, and that's the relief that DMP is entitled to, as opposed to simply setting the opinion aside and letting the department in essence have a do-over here because Section 10 says that the party can rely on that advisory opinion. Let me ask you, well, here's a slightly different question about it. Suppose that we agreed that the position was arbitrary and capricious and that the agency action should be set aside. Who would have the, and suppose also that we agreed with Judge O'Connor's injunction. I gather that there's still someone, some entity, that would have authority to investigate the facts as represented in the request. Would that, right, because if it turns out that the request says this is what our limited partners do, this is how the company operates, there's a whole series of factual representations, that under the advisory opinion process the department has to take as true. Does the department then get the power to investigate to make sure that in fact those facts are accurate? The department does have to take the facts in the request for advisory opinion as true. If through the process of regulation, because it's not as if this plan is not regulated. It's a matter of whether it's regulated by the department under ERISA or whether it's regulated by the states. That's really the issue. So if in the process of the regulation, the department discovers that there is noncompliance with the facts as stated in the request for advisory opinion, then it has jurisdiction in the ability as the regulator of the plan to be able to take action at that point. So I think that's what the court was asking. Let me turn back to the merits and again just hit at a high level the points because I think Judge Oldham you covered a lot of these in the questions. But as we talked about the advisory opinion disregarded the Supreme Court's analysis in Yates, the court there held that the common law should not be used and we heard during the department's opening argument. We heard all these common law tests and factors being argued under Darden. That is exactly what the Supreme Court said should not be done in Yates and that is exactly what the department's arguing. That's why it's arbitrary and capricious. What do you say to all the amici's points over and over again that they're not really self-employed individuals? Yates relies on that too, that it's a combination of factors and that there's lacking of self-employment here. I think the amici largely parrot what the department has said and what the department is saying is that you should look at the common law factors under Darden and that's what the department did in its advisory opinion. But Yates said that you don't do that. Yates looked at two different categories, whether an employee, whether an entity is an employee or whether it is a working owner. So it's just a difference of opinion about whether Yates is holistic or whether it looks at only specific factors? I don't believe, Your Honor, it's a difference of opinion. I think Yates was very clear and it says at page 12 there's no cause to resort to the common law. Let's look at why. Because in Yates you're looking at the common law under Darden and you're looking at a working owner and if the test for a working owner is the Darden test, then you just melded the two together because what the government is arguing is that whether you're a working owner depends on the Darden factors. Well, that's whether you're an employee anyway and if you're an employee, you're already a participant. So it just melts the two together and makes Yates meaningless. So that's why Yates doesn't apply. And, Your Honor, you raised opinion 9904A. Again, that sets out the department's test which wasn't followed here and that test is whether an individual has an equity ownership right of any nature in a business enterprise and is actively engaged in providing services to that business. And DMP's limited partners here meet that definition. They acquire ownership rights. They have the right to vote. They're entitled to income. They're actively engaged in providing services because they create and contribute Internet usage data to DMP for sale to third parties. But they're not working to create or sell a product and, in effect, they are the product. It's a different situation, it seems to me. Your Honor, it's what they are doing that is the product. It's that data. So, I mean, the way the court looked at it is you're the product. That's often what is said with social media whenever they're capturing that data for free. It's the adage in the social media arena that if there's no charge for the product, you are the product. And that's what social media is doing is capturing this data and then selling it. And what DMP is doing is instead allowing these folks as limited partners to come in and be able to capture their own data and to take control and to sell that. So it's really the data that's the product. It's a matter of who's controlling it, whether it's a social media site or some other entity, or whether it's the person actually creating the data that gets to control it and sell the data. What do you say to those who say this is too cute by half and it's really a sham and the data is really illusory? Well, the data isn't illusory because if you look at some of the links that we provide early in our brief, this is a multi-billion dollar industry. I mean, it's far from illusory. The department here doesn't like DMP's business. But as the district court found, that is not the test. The test is whether it complies with the factors to be a business and it does. It complies with the department's prior interpretation of working owner in its own definition and it complies with Yates, this court's opinion in-house, the regulations, etc. And that really is the test. It may be that the department doesn't fully understand, the department doesn't like this business, but that's not the test under ERISA as the district court properly found. Let me take just a moment and address the injunction as Judge Oldham, you said you wanted to address. The district court properly exercises discretion by joining the department from refusing to recognize the plan's ERISA status. Remand is unwarranted here because the record and the findings of the district court conclusively establish the plan is governed by ERISA. Here, the department already has all the facts it needed to determine the plan's status. In the request for advisory opinion, those facts had to be taken as true and there was no fact-finding that is necessary. And the department here just reached the wrong conclusion as a matter of law. So, as a result, remanding to the department would be pointless and the district court properly issued the injunction. In your view, does the injunction prohibit the department from investigating whether and to what extent, like suppose everything else you've said is true and suppose that on the facts represented, the plan is covered by ERISA. Does the injunction prohibit the department from investigating to make sure that the facts as represented are true? Do you see what I'm getting at? The injunction certainly would not prohibit the department from regulating. That's the department's job and the department would regulate the plan. If the facts change, then the department gets to issue a new decision because the advisory opinion is binding as long as the facts don't change. And I guess to answer exactly your question, if in the course of the regulation, it determines that there's been noncompliance with the facts as alleged, again, that's the department's job as the regulating agency to take appropriate action. So, I think the answer to your question is no, and I apologize for the long way it went. So, nothing prohibits the Department of Labor immediately from opening an investigation into the facts of whether or not they're accurate?  The department gets to regulate. I don't know that the department could just simply go in and immediately open an investigation because the facts as stated in the request for advisory opinion are taken as true and those are binding. Well, I mean, it gets a complaint from, hypothetically, the state of Washington that says, investigate if you think this is a sham and if it's not accurate factually. Not sham, but sham actually factually, you know. And then the injunction would not prohibit the normal investigation is what you told Judge Oldham though, right? Yes, Your Honor. Okay. Because you can imagine a different, obviously, let's just imagine a different case with a different requester who is less punctilious, right, and alleges here are the facts and they very clearly allege facts to get the plan covered by ERISA, but, you know, they're unethical and the facts are not actually true. Someone needs to be able to go in and figure out that, in fact, this is not an employer or an employee or whatever the relevant plan would say. And I take it that you don't think this injunction would prohibit the Department of Labor, if you went on everything else, from ensuring that what your co-counsel represented in the request is, in fact, what's going on with DMP. Correct. Because, again, the department is the regulatory agency and I believe it would be able to do that as part of the regulation. And they would also, like, if the limited partners or the working owners said, hey, we're not getting any care or something, then they would go to the department. They would go to the department. And, again, the department controls and regulates the plan, so yes. All right. Thank you, Mr. Harris. Thank you, Your Honor. Mr. Sheehy, you save time for a vote. Thank you, Your Honor. I just want to make three brief points. The first relates to the legal consequence that the other side tried to identify, which is an advisory opinion, in their view, somehow restricts the ability of states to go after plans such as this one. And that is the reasons that I think Judge Alvarado's question has been quite clear that's just not the case. The motivation behind the advisory opinion request was because they feared that the states might institute regulatory enforcement actions against them. And the fact that the advisory opinion has now been vacated and, indeed, enjoined, has not prevented states from continuing to initiate regulatory enforcement actions against them. So that just isn't a legal consequence that makes the advisory opinion final. Second, I want to address the merits. First, I want to correct the misimpression that the other side gave with respect to Yates. Yates just didn't have anything to do with the question of who was a working owner. Everybody in Yates agreed that somebody who runs their own medical practice and owns the medical practice is just transparently a working owner. And so the statements about the common law had to do with whether somebody who was conceitedly a working owner could be covered under ERISA. And there, the structure of ERISA and the text of ERISA made clear that that's not the case. But here, the question is, who is a working owner? And as to that, ERISA doesn't give any indication. Indeed, the terms working owner don't even appear anywhere in ERISA as far as I know and certainly not in the definition section. And so that's why the Supreme Court explained in cases like Clackamas that when you're confronted with this novel sort of business enterprise that doesn't really have any sort of parallels, recourse to the common law is entirely appropriate. But what about recourse to the advisory opinions from the department? So those also didn't address the legal question, Your Honor, namely who is a working owner. Again, those had to do with electricians who owned their own electrical practice and everybody agreed that those electricians would be working owners. So the department wasn't presented with the question, am I a working owner, like the department was presented with them here. But, Your Honor, also— If ERISA doesn't have a definition of working owner and the department has supplied it before and has been cited, has been given in the request, references to those previous advisory opinions discussing this term, it makes the silence in the current advisory opinion deafening. Your Honor, two answers to that. First, the department didn't address those because in the department's view, as explained further in the brief, those definitions just weren't definitions at all, nothing in the advisory opinions cited by the other side purported to establish a definition of working owner together and for all time. And moreover, for the reasons explained in the brief, any such error was harmless because they wouldn't satisfy those definitions anyway. But even if the court disagreed with all of that and said, you know, the silence is deafening, the department has to do a better job, that leads to the third point I have, which has to do with remedy. If the court believes that the department, you know, dropped the ball and didn't do its homework, the appropriate remedy under the APA is to tell the agency, no, you know, the other side raised a couple of good points, you didn't address them, please address those good points in the first instance. The appropriate remedy is not an injunction, permanently enjoining the department from refusing to acknowledge the ERISA status of the plan forever and for all time, or for refusing to recognize the limited partners as working owners of DMP. And I understood the colloquy that you had with opposing counsel with respect to the nature of the department's authority after the injunction to really get at that point. Even opposing counsel appears to concede that the Department of Labor would be able to continue to investigate the plans to make sure that all of the representations in the advisory opinion request were accurate and kosher. But the problem is the injunction doesn't say that, right? The injunction just says, very categorically, the department is enjoined from refusing to do the sort of acknowledgement and from refusing to do the sort of recognition that the district court thought was permissible. So, as you know, we have lots of precedent where we have injunction appeals and we will affirm an injunction as modified. If the injunction were modified the way that Mr. Harris and the court were discussing earlier, would that fix the remedy question? It wouldn't, Your Honor. And that's the more fundamental point that I want to end on is the fact that the other side isn't entitled to any sort of injunctive relief whatsoever. And that's because vacater of the advisory opinion that the court concluded was erroneous would completely resolve their harms. The only harm that the other side has been able to point to is the possibility that if the advisory opinion isn't gone or if there's no injunction, the states would be able to proceed against them. But as I said in my very first point, the states already have the ability to proceed against them. They had that ability before the injunction. They will continue to have the ability after the injunction, even as modified. And so the injunction won't redress the only harm that the other side has identified to vacater. And as the Supreme Court made clear... May I just finish very briefly? As the Supreme Court made clear in cases like Monsanto, when the other side can't identify any sort of harm like that, then no injunction is appropriate and vacater is the only permissible remedy in the APA. All right. Thank you, Mr. Schiff. Thank you very much. Your case and both of today's cases are under submission, and this panel is in recess until 9 o'clock tomorrow morning.